Nash, J.,
clissentiente. I do not concur with my brethren in the decision of this case. If, in their opinions filed, there had been a concurrence of views and no antagonistic reasoning, I should be more diffident of the one I have formed.
When the cases of Waugh v. Hampton, and Trice v. Turrentine, which are now overruled, were decided, I concurred with Judge Daniel in the opinions filed by him. I have just examined those opinions with all the care I could bestow upon them, and with no little solicitude. I have heard nothing to shake or alter the views there taken. Nearly, if not all, the reasoning urged in this case, and most of the authorities now cited, were then used and pressed into the argument. It was thought by a majority of the Court then, that, although arguments ah inconveniente were entitled to much weight in the construction and application of statutes, they had not, and could not have, the effect of altering the law and contradicting the will of the legislature, when acting within their constitutional limits : that, if an act be plain and its meaning perspicuous, the Courts have no authority to refuse to execute it, because it may produce inconvenience ; nor have *596 they a right to apply it to cases, clearly not within the view of the legislature, unless the language used justify such application. Of this character is the familiar case of the statute, which punished with death the drawing of blood, within the verge of the Court. It was adjudged not to apply to a surgeon for bleeding a man, who had fallen down in a fit of apoplexy. Clearly not, without at the same time supposing those, who passed the statute, were crazy. The case now before the Court is, pari passu, with that of Waugh v. Hampton, and, without overruling it, judgment cannot be given for the plaintiff: if, indeed, there be, in substance, a difference, it is in favor of the defendant here. In this case the defendant actually arrested Walker, who appears to have been the principal debtor, contrary, it is true, to the directions of the plaintiff, (which, in my opinion, he had a clear right to do,) and permitted him to go at large upon the promise to appear at Court and give an appearance bond. Walker did appear and was again arrested by the defendant, and discharged by the direction of the plaintiff’s attorney. I do not,however, propose to further notice this point, though, in my opinion, it would have been a good defence to the action.
I consider this a question arising exclusively under the statute law of this State and to bo decided by it. In order to arrive at a just construction of the statute, we must see what the law was at the time of its passage, and ascertain what was the evil to be remedied. - By the common law, bail could not be subjected to a recovery, assuch, until & capias ad satisfaciendum had issued against the principal. Originally it was a wri-t for service — to be issued to the County, where the venue was laid, and if the defendant could not be found there, a testatum ca sa. might be issued to any other County — 1 Sellon’s Prac. 518. The bail by their contract undertake, that, if judgment be obtained in the action against the defendant, he *597 shall satisfy it, or render himself a prisoner, or that they will do it for him. This is only on the supposition, that the plaintiff shall not bo able to take the defendant in execution, and thereby get satisfaction from him, either by his paying the debt or hv having his body in custody. As the bail were only answerable on the failure of their principal, when the plaintiff intended to resort to the bail, he was bound to proceed by a ca. sa against the principal, and the writ was to be returned by the sheriff with a “non est inventus2 Sellon 45. And, if the writ be against two or more, it must be executed on all. 5 Rep. 86,11 Rep. Godfrey’s case. In process of time, the ca. sa., so far as. the bail were concerned, ceased to be a writ for service —the principle having been established, that the bail was not bound to surrender the body of his principal, until it was demanded of him, it was considered unnecessary to arrest the principal, and notice to the bail, that he was looked to for satisfaction, was sufficient. To give this notice, the capias was required to lie four days in the sheriff’s office, and to be entered in his public book, as it was termed, whereby the bail, knowing where to look, could ascertain whether he was required to surrender the principal or not. 2 Tidd’s Prac. 1098-9. After lying in his office the four days next preceding the return day, the sheriff returned it “non est inventus” though the defendant may have been with him all the time, and without looking for him at all. The writ thus becomes a mere matter of form. The plaintiff did not intend or wish it to be executed. His object was to get satisfaction out of the bail, without making any effort to get it out of the principal: thereby losing sight of the essence of the contract of the latter — that if the plaintiff could not take the defendant in execution, the bail would be liable. 2 Sellon. 44. Such was the law in this State, when the act of 1777 was passed. What was the evil, under which bail labored at that time, as the practice then was? And what al *598 tcration was intended to be made by ,this act? North Carolina, at its enactment, was a very large State, extending from the Atlantic Ocean to the Mississippi River— the population thin and scattered — our Counties large — ■ and the districts, into which it was divided, and in which the Superior Courts were held, were very extensive ; and the latter had jurisdiction over the whole State. To adopt or continue the English rule, as to notice to bail, would have been a mockery — it was a rule or practice unsuited to the situation of the country and not at all calculated to give' notice to the bail. What was the remedy provided by the act of 3 777 ? It is, that a plaintiff shall not take out execution against the bail, until an execution be first returned, that the defendant is not to be found in his proper County, and until a. scieri facias be first made known to the bail, which scieri facias shall not issue, until such notice shall have been so returned. It is obvious, that the legislature intended that the ca. sa> should no longer in practice be a writ of form, but that it should be of substance, and that it was intendedmainly, i-f not entirely, for the benefit of the bail. The plaintiff shall carry out in good faith the contract on his part with the bail; He shall first call upon his principal. In a vast majority of cases, a man’s bail will be those of his own County and vicinage. A ca. sa., if issued to that County, could scarcely fail to come to the knowledge of the bail, and would at once apprise him of the necessity of taking care of himself. The act requires the writ to issue to the proper County, and in Findlay v. Smith. 3 Dev. 247, the Court decide, “ that, prima facie, the proper County is the County where the original writ was executed.” After animadverting upon the use of the ca. sa., as being a matter of form, the opinion proceeds, ■ “we think our legislature meant something more in our ■ statute, and that it is required, as well for the benefit of the bail, as for the plaintiff, that it ought to be issued *599 in the County, where it may be executed by the actual arrest of the defendant.” This is a judicial exposition of the act of 1777, so far as to the use of the ca. sa., to subject bail. Let us now see, what is its meaning where it says, that a scire facias shall not issue against the bail, until an execution be first returned, that the defendant is not to be found, &c. What is meant by the word defendant? At common law, all the defendants to a judgment, to use my brother Pearson’s expression, is a unit, and the ca. sa. must run against all — it must be as broad as the judgment. Hobart 59. Foster v. Jackson, 6 Dur. & East 525. Clark v. Clements and another. The word defendant means, then, all, who are defendants on the record, and who are liable to discharge it. I agree with his Hon- or Judge Pearson in his opinion on this part of the case, that, if, from the nature of the judgment, the ca. sa. is to be as broad as the judgment, then the conclusion of the Court in Waugh v. Hampton, and Trice v. Turrentine, was perfectly logical: that, as the act requires the capias to be returned non est inventus, before the bail can be proceeded against, the plaintiff has no right to deprive them of this advantage, by directing the sheriff not to obey the writ as far as one or more of the defendants is concerned. “This,” says his Honor, “appears to me to be trifling with the forms of legal proceedings.” Suppose the execution had been returned in this case and in those overruled, non est inventus as to a part of the defendants, without taking any notice of the rest, would that have been a sufficient return within the act ? I think, very clearly not. Let it be borne in mind, that the controversy arises mainly, if not entirely, upon the true construction of the 19th section of the act of 1777. It is not denied, but that the execution must be as broad as the judgment — that is, must issue against all the defendants, where there are more than one and all are alive. To say, that the plaintiff has a right to intercept the law in its course, by di« *600 recting the sheriff not to execute it upon some, is, in my opinion, and I say it with all due. respect, paltering with the law. Why adhere to the form, when the substance is gone ? Why issue the execution at all 1 or, if issued, why not let it be issued against (he one, who is known to have left the County, and is not worth a stiver, in order to get at his bail ? The cases cited do not appear to me to conflict in any degree with the opinions in those overruled ; nor with this. They are all on cases, where the returns of the sheriff were full — here and in those overruled it was not. so. In Waugh v. Hampton, the return is, “non est inventus as to Falkner and Richardson,” and is silent as to the other defendants. In Trice v. Turrenline, it is, “King not found — I am directed by the plaintiff to execute this process on King only.” In the present case, it is, ‘'not executed on D. Walker. — Samuel Forkner not found.” Can it with any propriety be said, that such a return is within the act I — is the ca. sa. returned, “non est inventus V’ But it is said, that the sheriff, by not taking bail, has made himself special bail for all and stands as if he had given a separate bail bond for each. Be it so, he has a manifest interest in having each principal •debtor before the Court; for a payment by one is a payment by all, so far as the bail are concerned. If the sheriff is not bound to arrest all the defendants, it is easy to imagine cases, in which the law may be perverted to the injury of the bail, particularly when he is the sheriff. It is a well established principle, that there is no contribution among bail, nor has the bail, who discharges the liability of his principal, any claim upon any person but his principal, Let us suppose a case, then : A. and B. are sued jointly upon their joint obligation, in which they are both principals. A. is entirely insolvent, and B. solvent, The sheriff, knowing the entire ability of B. to discharge the debt and having confidence in his integrity, takes no bail, and thereby constitutes himself special bail for each — a *601 joint judgment is had against them — B. discharges it, and not willing to pay the money, prevails on the plaintiff to let him have the use of his name to get it out of the bail o(A. All he has to do is to cause a ca. sa. to issue against himself and A., and a direction to the officer from the plaintiff not to execute it on B , but on A. alone. The latter has left the County and the writ is returned non est inventus as to him. The sheriff is unable to prove the payment by B., and is subjected to the payment of the judgment for the benefit of B., for whom he is actually bail. Whereas, if it be declared to be the duty of the officer to seek for, and execute the writ on, both the defendants, it never would, in the case supposed, issue at all. And in the same way may the bail of one defendant, who is insolvent, compel the bail of another principal, who is also insolvent, not to contribute but to pay the whole debt. Now I do not pretend, that any such -case ever did exist, or ever will, but it certainly may ; and, as, in my opinion, the act of 1777 was made for the benefit and protection of the bail, I prefer that exposition, which is in accordance with its directions and most surely answers its ends. Many other cases will readily suggest themselves. Some are pointed out in the opinions in the cases of Waugh v. Hampton, and Trice v. Turrentine. Nor can any case be imagined more strongly exhibiting the danger to bail by the construction, against which I am contending, than the one now before us. I strongly suspect, that Walker was the principal in the note or obligation, upon which the original action was brought. He is passed by and the bail of a man, who had left the County, is called on to pay the debt — there is nothing to show, that Walker could not pay it. It is no answer, that the defendant is the bail for both. The principle is the same under the act of 1777, as if Walker and Forkner had given separate and distinct bail.
*602 But another objection has been taken to the correctness oí the decision in the cases overruled, and to the opinion of the Judge below in this. It is said, the error consisted in considering the judgments, upon which the ca. sa. issued as joint; whereas, they are in law joint and several, and the plaintiffs had a right to give to the sheriff the instructions they did. I do not agree with this position. It is based upon the 4th section of the act oí 1789, ch. 314, and the exposition of it made by the Court in the case of Smith v. Fagan, 2 Dev. 302. In my opinion, the position is sustained by neither. The legislature has left us in no 'doubt, as to its meaning. The preamble to the section, which, according to law books, is the key to unlock the mind of the law-giver, recites, that, by the common law, upon the death of a joint obligor, the debt cannot survive against his representative ; which frequently operates oppressively and injuriously to the surviving obligors. ^To remedy which : “Be it enacted, &c., in case of the death of one or move obligors, the joint debt or contract shall and may survive,” &c. Having provided for the evil recited in the preamble, they goon to prescribe, “that, after the ratification of the Act, in all cases of joint obligations, or assumptions of co-partners, or others, suits may be brought and prosecuted on the same, as if such obligations or assumptions were joint and several.” Nothing is said as to the nature of the judgment or of altering its effect. By the common law, if two or more are jointly and severally bound in a contract, and they are sued jointly, and judgment obtained against all, the execution must be against all; because, though they are several persons, yet they make but one debtor, when sued jointly. Hob. 59. 6 Term Rep. 525. Clark v. Clements et al. This is not altered by the statute, so far as the execution is concerned. Numerous decisions of our Courts affirm the principle, that, when the judgment is against several, the execution must go against all — in other words, be as *603 broad as the judgment. The opinions in this case affirm it. I do not consider the case of Smith v. Fagan, as sustaining the position. A judgment had been obtained against two defendants, one of whom had subsequently-died, and the scievi facias was to subject the estate of the deceased defendant to the payment of the judgment. The Court decided, that under the first enactment of the 4th Section of the act of 1789, the debt survived against his representative or estate. It is there admitted, that the case was not within the act, except by intendment, as being within the mischief proposed to be corrected. It does not, in my estimation, touch the question raised here. It does not, as I understand it, decide, that all judgments, even upon contracts, obtained against several persons are joint and several. The Court confine their attention to a case, coming within the mischief intended to be provided for by the act — that is, where one of several defendants to a judgment dies. After giving several instances, where the death of one of several joint obligors shall not throw the burthen entirely upon his co-obligor, but his representative may be brought in, it is observed, “we can see no possible reason, why, in the. case of a joint judgment it should not be so likewise” — that is, where the judgment is joint against several and one dies, no reason exists, why the debt or assumption should not survive against his estate. In this case and in those overruled, the judgments are joint — that is, are against all the defendants and they were all alive at the time the ca. sa. issued, and are so still, as far as we are informed. The Court could not have intended to declare, that all judgments were several as well as joint. If they had, it would have been an obiter dictum, not called for in the decision of the case, and no further binding than as sustained by reason and the high authority, from which it emanated. But, that they did not so intend is evident from the case of the Bank of Newberne v. Stanly & Jones, 2 Dev. 476, *604 decided by the same Judges at the succeeding Term of the Court. A scieri facias had issued against all the heirs of one Harvey to subject the real estate to the payment of a judgment, obtained against the administrator. One oí the defendants was an infant. Judgment was obtained against all, and a joint sci.fa. issued against ai!; and the Court say it was properly so issued, but that it could not, under the act of 1789, ch. 3J1, be levied on the land of the infant, until twelve months after the rendition of the judgment.
If they had intended in Fagan's case to rule, that all judgments were joint and several, the question could not have been raised in the case referred to. But the contrary opinion has been declared by this Court in repeated instances, particularly in that series of cases, wherein the Court have declared, that one defendant in a joint judgment could not appeal. Hicks v. Gilliam, 4 Dev. 218, is the first and leading case on the subject. It was decided in 1833, a majority of the Court consisting of the same Judges, who made the decision in Fagan's case. This was followed by the case of Dunn v. Jones, 4 Dev, & Bat. 154, decided in 1838. In Stiner v. Cauthorn, 4 Dev. & Bat 501, decided in 1839, the doctrine is recognised. So in Stephens v. Batchelor 1 Ire. Rep. 60, and in Wilkinson v. Gilchrist, 4 Ire, 228, in 1844, it was ruled, that all the parties to a judgment, either plaintiffs or defendants, must join in an appeal or it will be dismissed. The case of Donnel v. Shields, 8 Ire. 272, decided in 1848, is an exceedingly strong one. It was an action of trover for the conversion of slaves — the defendants pleaded severally, and the jury found them “severally guilty,” but it assessed the damage jointly against the whole. The Court say the judgment was a joint one, and that one defendant could not appeal. At the same term the case of Smith v. Cunningham, page 460, was decided upon the same principle. Here, then, are seven cases following quick *605 upon the heels of Fagan’s case, and, at no long intervals, each other, and all directly upon the principle, that judgments are joint, where the damages are joint against all the defendants, and necessarily so, because the judgment must pursue the verdict, where it is given upon it. Hey don’s case, 11 Cooke 5. Sawfield v. Bancroft, Str. Rep. 910. It is impossible to suppose the individuals, making these decisions, were ignorant of Fagan’s case, or of the principle intended to be decided by it; particular!}' when we recollect, that the leading member of the Court, which made them, was a member of the Court when Fagan’s case was decided, and delivered the opinion To sustain the position, that all judgments, since the act of 1839, ch. -, are joint and several, is, at a dash of the pen, to overturn all these cases. I cannot consent to do so. I believe they were correctly decided; and that, therefore, as far as repeated decisions of this Court can settle any legal question, it is settled law here, that, when damages are assessed by a jury jointly against several defendants, the judgment must be joint, and cannot be several ; and that, the capias ad satisfaciendum must run against all the defendants ; and that, under the act of 1777, it must be returned non: cst inventus against ail, if alive, before the plaintiffcan proceed against the bail; and that it is not in the power of the plaintiff to intercept the course of the law, by directing the shertiff not to execute it on some of them ; and that, therefore, neither in the cases over-ruled, nor in this, was there such a return of the ca. sa, as is contemplated by the act of 1777.
Other questions arose on the argument in the case of Trice v. Turrentine, which I have not noticed ; because I agreed with my Brethren, that there must be a repleader ; and if the case should come before us again, an opportunity will then be afforded me to do so.
My opinion is, that the judgment below in this case ought to be affirmed.
Per Curiam.
Judgment reversed and a venire de novo.